**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| SLOPESIDE MANAGER, LLC, et al., | ) | |
| | ) | |
| Plaintiffs/Counterclaim Defendants, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| 12TH & 5TH MEMBER, LLC, et al., | ) | |
| | ) | C.A. No.: N24C-09-096 EMD CCLD |
| Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CRAIG ZOGBY, | ) | |
| | ) | |
| Third-Party Defendant. | ) | |

Submitted: September 7, 2025[1]
Decided: October 30, 2025
Redacted: November 19, 2025[2]

*Upon Motion for Judgment on the Pleadings and Motion to Stay*
**DENIED**

Thad J. Bracegirdle, Esquire, Sarah T. Andrade, Esquire, Bayard P.A., Wilmington, Delaware, John Baughman, Esquire, Allison Melton, Esquire, Baughman Kroup Bosse PLLC, Norfolk Virginia. *Attorneys for Plaintiffs/Counterclaim Defendants Slopeside Manager, LLC, et al. Third-Party Defendant Craig Zogby.*

Samuel L. Moultrie, Esquire, Greenberg Traurig, LLP. *Attorneys for Defendants/Counterclaim Plaintiffs/Third-Party Plaintiffs 12th and 5th Member, LLC, et al.*

**DAVIS, J.**

## I.    INTRODUCTION

This is a civil action assigned to the Complex Commercial Litigation Division of the

Court.  Plaintiffs Slopeside Manager, LLC ("Slopeside Manager"); Gainesville Properties IV

---

[1] The Court held a hearing on July 7, 2025 (D.I. No. 59).  The transcript from that hearing was lodged on September 7, 2025.  (D.I. No. 60).
[2] Redacted per Order dated November 19, 2025 (D.I. No. 64).

Mgr, LLC; Salt Lake City Properties Mgr, LLC; Rogers 28th Street Mgr, LLC; Salt Lake City Properties II Mgr, LLC; and Michael Augustine (collectively "Alta," sometimes referred to by the parties as the "Alta Companies") filed suit against Defendants 12th & 5th Member, LLC; 12th & 5th Manager, LLC; KAREP V OC, LLC; KAREP V OC REOC JV, LLC; 12th & 5th JV, LLC; 12th & 5th, LLC; Salt Lake City Properties I Manager, LLC; KAREP REIT V REOC JV, LLC; Salt Lake City Properties I JV, LLC; Salt Lake City Properties I, LLC; Rogers 28th Street Properties Member KI, LLC; KA Multifamily Master Fund, LLC f/k/a KA Impact Master Fund, LLC; Rogers 28th Street Properties JV KI, LLC; Rogers 28th Street Properties KI, LLC; Salt Lake City Properties Member KP6, LLC; Salt Lake City Properties Manager KP6, LLC; KAREP VI REOC, LLC; Salt Lake City Properties JV KP6, LLC; Salt Lake City Properties KP6, LLC; and SLC Bueno Ave KP6, LLC (collectively "Kayne," sometimes referred to by the parties as the "Kayne Companies").[3]

Alta filed its Complaint (the "Complaint") against Kayne on September 13, 2024.[4] Alta asserts the following claims: (i) Count I: Breach of Contract;[5] and (ii) Count II: Declaratory Judgment.[6] Alta claims that its damages exceed $1,054,636.00.[7]

On November 20, 2024, Kayne filed its Answer to Complaint, Affirmative Defenses, and Counterclaim against Alta and Third-Party Defendant Craig Zogby ("Mr. Zogby").[8] Kayne's affirmative defenses assert lack of jurisdiction, improper venue, failure to state a claim, fraudulent inducement, and several equitable defenses.[9] Kayne's Counterclaims assert: (i) Count

---

[3] *See* Alta's Complaint (hereinafter "Compl.") (D.I. No. 1).
[4] *Id*.
[5] *See id.* ¶¶ 59-67.
[6] *See id.* ¶¶ 68-73.
[7] *See id.* ¶ 67.
[8] *See* Kayne's Answer to Complaint, Affirmative Defenses and Counterclaim (hereinafter "Kayne Answer," "Kayne Affirmative Defense," or "Kayne Countercl.," as applicable) (D.I. 28).
[9] *See* Kayne Answer at 22-23.

I: Fraud against Craig Zogby and Michael Augustine;[10] (ii) Count II: Intentional Misrepresentation against Craig Zogby and Michael Augustine;[11] (iii) Count III: Breach of Contract (the Sugar House DM Agreement) against Slopeside Manager;[12] (iv) Count IV: Breach of Contract (the Bueno DM Agreement) against Slopeside Manager;[13] (v) Count V: Breach of Contract (the Sugar House JV Agreement) against Slopeside Manager;[14] (vi) Count VI: Breach of Contract (the Bueno JV Agreement) against Slopeside Manager;[15] (vii) Count VII: Breach of the Sugar House Guaranty against Michael Augustine;[16] (viii) Count VIII: Breach of the Bueno Guaranty against Michael Augustine;[17] and (ix): Count IX: Declaratory Judgment against Alta and Mr. Zogby.[18]  Kayne claims that its damages exceed $11,000,000.00.[19]

On December 20, 2024, Mr. Zogby filed his Answer to Kayne's Third-Party Complaint.[20]  In the same transaction, Alta filed its Reply to Kayne's Counterclaim.[21]  Alta and Mr. Zogby's defenses assert failure to state a claim and several equitable defenses.[22]

On January 17, 2025, Alta and Mr. Zogby moved for judgment on the pleadings (the "Motion") pursuant to Delaware Superior Court Civil Rule 12(c) against Kayne, noting:

> Although Craig Zogby is named as a defendant to a third-party complaint filed by the Defendants, his interests are aligned with [Alta] and the arguments he asserts are the same, therefore he is grouped together with [Alta] for purposes of this Motion.[23]

---

[10] *See* Kayne Countercl. ¶¶ 161-173.
[11] *See id.* ¶¶ 174-185.
[12] *See id.* ¶¶ 186-194.
[13] *See id.* ¶¶ 195-203.
[14] *See id.* ¶¶ 204-210.
[15] *See id.* ¶¶ 211-217.
[16] *See id.* ¶¶ 218-221.
[17] *See id.* ¶¶ 222-225.
[18] *See id.* ¶¶ 226-232.
[19] *See id.* at 69.
[20] *See* Craig Zogby's Answer to Kayne Countercl. (hereinafter "Zogby Answer") (D.I. No. 35).
[21] *See* Alta's Reply to Kayne Countercl. (hereinafter "Alta Reply") (D.I. No. 36).
[22] *See id.* at 57-59.
[23] *See* Alta and Craig Zogby's Motion for Partial Judgment on the Pleadings at n. 1. (hereinafter "Mot.") (D.I. No. 38).

Kayne filed its response in opposition to the Motion (the "Opposition") on March 12, 2025.[24]

Alta and Mr. Zogby filed their reply brief in support of the Motion (the "Reply Brief") on April 2, 2025.[25]

On May 1, 2025, Alta and Mr. Zogby moved to stay discovery (the "Motion to Stay") pending the Court's ruling on the Motion.[26] On May 22, 2025, Kayne filed its response in opposition.[27]

The Court held a hearing on both motions on July 7, 2025.[28] The Court took the motions under advisement at the end of the hearing.

For the reasons set forth below, the Court **DENIES** the Motion for Partial Judgment on the Pleadings and the Motion to Stay Discovery.

## I.    RELEVANT FACTS

### A.  THE PARTIES

#### 1.  *Plaintiffs and Third-Party Defendant*

Plaintiff Slopeside Manager, LLC is a Delaware limited liability company with its principal place of business in Park City, Utah.[29]

Plaintiffs Gainesville Properties IV Mgr, LLC, Salt Lake City Properties Mgr, LLC, Rogers 28th Street Mgr, LLC, and Salt Lake City Properties II Mgr, LLC, are Delaware limited liability companies with their principal places of business located in Delaware.[30]

---

[24] *See* Kayne's Response to Alta and Craig Zogby's Motion for Partial Judgment on the Pleadings (hereinafter "Opp'n") (D.I. No. 42).
[25] *See* Alta and Craig Zogby's Reply Brief in Support of Their Motion for Partial Judgment on the Pleadings (hereinafter "Reply Br.") (D.I. No. 43).
[26] *See* Alta and Craig Zogby's Motion to Stay Discovery (hereinafter "Mot. to Stay Disc.") (D.I. No 45).
[27] *See* Kayne's Response to Alta and Craig Zogby's Motion to Stay Discovery (hereinafter "Opp'n to Mot. to Stay Disc.") (D.I. No. 48).
[28] D.I. No. 59.
[29] *See* Compl. ¶¶ 2-6.
[30] *See id.* ¶ 3.

Plaintiff Michael Augustine is an individual who resides in Park City, Utah.[31]  Mr. Augustine founded Utah-based Alta Terra Real Estate ("ATRE") in 2019.[32]  Mr. Augustine is the "100% member and manager of Slopeside Manager, LLC."[33]

Third-Party Defendant Craig Zogby is an individual who resides in Park City, Utah.[34]  Mr. Zogby is Mr. Augustine's business partner, "and participates materially in the management of [ATRE] and its affiliates, including Counter-Defendants[.]"[35]  Prior to becoming co-managing partner of ATRE, Mr. Zogby was "Managing Director at Kayne [], from 2010 through 2022."[36]

### 2. Defendants

All Defendants, listed above, are Delaware limited liability companies with their principal places of business located in Delaware.[37]

## B. NATURE OF THE DISPUTE

### 1. The Joint Venture Real Estate Development Projects

This case concerns a series of joint venture real estate development projects between Alta and Kayne (collectively, the "Projects").[38]  The at issue Projects are: (i) the "Ufora Project" located in Gainesville, Florida; (ii) the "Rogers Project" located in Rogers, Arkansas; (iii) the "Sugar House Project" located in Salt Lake City, Utah; (iv) the "Bueno Project" located in Salt Lake City, Utah; and (v) the "Trolley Project" located in Salt Lake City, Utah.[39]

---

[31] See id. ¶ 7.
[32] Kayne Countercl. ¶ 38.
[33] Id.
[34] See id. ¶ 29.
[35] Id.
[36] Id. ¶ 42.
[37] See Compl. ¶¶ 8-27; see also Kayne Countercl. ¶¶ 2-22.
[38] See Compl. ¶¶ 30-31; see also Mot. at 4 ("Although the agreements associated with these projects were made between various Delaware business entities, based on who controlled the various entities they can be and have been readily grouped into two opposing sides in this action: the Plaintiffs (the Alta Companies) and the Defendants (the Kayne Companies).").
[39] See Compl. ¶ 30; see also Mot. at 5.

For each Project, the parties created a Delaware LLC "with certain Alta Companies and certain Kayne Companies becoming the members of those LLCs."[40] "That entity would then acquire land, which the parties would improve according to a development plan. Once developed, the improved real estate would be operated on an ongoing basis or sold onward to a third party for a profit."[41]

Alta and Kayne also entered into two contracts for each Project: (i) an LLC operating agreement (a "JV Agreement"); and (ii) a development manager's agreement (a "Development Agreement").[42] "Alta, through [Slopeside Manager], would act as 'manager' of each Project under the JV Agreements and 'development manager' under each Development Agreement."[43]

Kayne claims that Slopeside Manager and Mr. Zogby selected Makers Line, LLC ("Makers Line") as the general contractor for the Sugar House Project.[44] Kayne asserts that Slopeside Manager was responsible for ensuring that: (i) Makers Line completed the Sugar House Project on time (within 27-30 months);[45] and (ii) Makers Line completed the Sugar House Project for no more than the guaranteed maximum price ($89,903,519.00).[46] Alta and Mr. Zogby deny these claims.[47]

Kayne contends that by September 2023, "the Sugar House Project was approximately one year behind schedule. Nevertheless, Slopeside Manager claimed that the Project had not exceeded its budget."[48] Alta and Mr. Zogby deny these contentions.[49]

---

[40] *See* Compl. ¶ 32; *see also* Mot. at 4-5.
[41] Compl. ¶ 32.
[42] *See* Compl. ¶ 31; *see also* Mot. at 5.
[43] Compl. ¶ 33.
[44] Kayne Countercl. ¶ 61.
[45] *See id.* ¶¶ 68-70.
[46] *Id.* ¶¶ 71-72.
[47] *See* Zogby Answer ¶¶ 61, 68-70, 71-72; *see also* Alta Reply ¶¶ 61, 68-70, 71-72.
[48] Kane Countercl. ¶¶ 74, 80-81.
[49] *See* Zogby Answer ¶¶ 74, 80-81; *see also* Alta Reply ¶¶ 74, 80-81.

On October 18, 2023, Mr. Zogby informed Kayne that Makers Line was insolvent and was ceasing all business operations, including the Sugar House Project.[50] Makers Line agreed to assign the remaining work to other subcontractors.[51] Kayne asserts that Slopeside Manager and Mr. Zogby represented to Kayne that the Sugar House Project "would get back on track" and hired Built Contractors, LLC as its construction adviser.[52] Alta and Mr. Zogby deny these assertions.[53]

Kayne contends that by February 2024, "work on the Sugar House Project was suspended by the fire marshal, yet Slopeside Manager did not inform [Kayne] of this[.]"[54] Kayne also claims that throughout the end of 2023 and into 2024, the subcontractors "complained about non-payment and threatened to file, and did file, mechanic's liens against the Sugar House Project, yet Mr. Zogby and Mr. Augustine continued to represent to [Kayne] that the project was on track."[55] Alta and Mr. Zogby deny these contentions.[56]

Kayne alleges that during this time, the Rogers Project was at its earliest phase of development, the Bueno and Trolley Projects "were suffering from the similar construction delay and cost overrun problems as the Sugar House Project," and the Ufora Project "was completed but had been delivered significantly late."[57] Alta and Mr. Zogby deny these allegations.[58]

---

[50] *See* Kayne Countercl. ¶ 87.
[51] *Id.* ¶ 88.
[52] *Id.* ¶¶ 90-91.
[53] *See* Zogby Answer ¶¶ 90-91; *see also* Alta Reply ¶¶ 90-91.
[54] *See* Kayne Countercl. ¶ 99.
[55] *Id.* ¶ 100.
[56] *See* Zogby Answer ¶¶ 99-100; *see also* Alta Reply ¶¶ 99-100.
[57] Kayne Countercl. ¶¶ 107-109.
[58] *See* Zogby Answer ¶¶ 107-109; *see also* Alta Reply ¶¶ 107-109.

### 2. *Kayne's Notices of Default and Alta's Response*

On May 29, 2024, Kayne sent Alta correspondence asserting alleged contractual defaults with respect to all the Projects (the "Notices of Default").[59] The Notices of Default demanded that Alta be removed as manager of the Projects.[60] Kayne also claimed that Alta failed to: (i) meet Project deadlines; (ii) provide Kayne with written notice of delays with proposed resolution plans; and (iii) make payments on the loan associated with the Rogers Project.[61]

On June 6, 2024, Alta sent Kayne its response titled "Dispute Notices," in which Alta disputed the above allegations and further asserted claims against Kayne.[62] On June 11, 2024, Kayne delivered to Alta its responses to the Dispute Notices.[63]

### 3. *Settlement Agreement Negotiations*

After exchanging the Notices of Default and Dispute Notices, the parties engaged in settlement negotiations to resolve their disputes.[64] "The negotiations lasted over a month. They included multiple exchanges of red line drafts emailed back and forth between the parties, and multiple phone calls between the parties and their counsel."[65] Alta claims, and Kayne denies,[66] that on June 13, 2024, "a senior Kayne executive emailed a third party referring to the global settlement agreement between Kayne and Alta."[67]

On June 25, 2024, Kayne's counsel sent Alta's counsel the first drafts of settlement agreements, stating that "these drafts remain subject to change until executed."[68] On July 19,

---

[59] *See* Compl. ¶ 36.
[60] *See id.*
[61] *See id.*
[62] *See id.* ¶ 38.
[63] *Id.* ¶ 39.
[64] *See id.* ¶ 40; *see also* Mot. at 6.
[65] *Id.*; *see also* Mot. at 6 (referencing Ex. 1 to Mot.).
[66] *See* Zogby Answer at 12-13; *see also* Opp'n at 10.
[67] Compl. ¶ 41.
[68] *See* Kayne Countercl. ¶ 112 (referencing Ex. G to Kayne Countercl.).

2024, the parties and their counsel participated in a Zoom call to discuss the settlement agreements.[69]

Alta claims, and Kayne denies,[70] that the parties agreed to several material terms during this call.[71] Alta also contends that at the end of the call, "Kayne's counsel stated in sum and substance, 'why don't we just drop everything into some escrow, and we can run everything that way, we are settling everything at once so all the properties, agreements, money, same day.' All parties agreed to this process."[72] Kayne denies this contention.[73]

On July 23, 2024, Kayne's counsel sent an email to Alta's counsel titled "ATRE / Kayne - Settlement Agreements."[74] The email states, "See attached for further revised drafts of the Settlement Agreements, clean and redline against the prior drafts of each. Please let us know of any questions or comments."[75] The email included eight attachments—two sets of drafts (the prior drafts and Kayne's updated drafts) for the following four Projects: (i) the Rogers Project; (ii) the Ufora Project; (iii) the Sugar House Project; and (iv) the Bueno and Trolley Project.[76]

Later the same day, Alta's counsel responded to Kayne's email, stating, "Kayne Team – these drafts are approved as final."[77] Alta attached W-9s and wiring instructions to facilitate payment.[78] The email also states:

> [Alta's Counsel] will coordinate signature with [Alta] and I assume [Kayne's Counsel] will coordinate with Kayne. We can exchange signature pages among the

---

[69] See Compl. ¶ 42; see also Mot. at 7, 17.
[70] See Kayne Answer at 13.
[71] See Compl. ¶ 42(a)-(i).
[72] Id. ¶ 43.
[73] See Kayne Answer at 14.
[74] See Compl. ¶ 44; see also Mot. at 3, 17 (referencing Exs. 2-6 to Mot.).
[75] See Ex. 2 to Mot.
[76] Id. Mot. at 5 n.2 ("The Bueno Project and the Trolley Project have been treated as a single project called 'Bueno Trolley' at times … and at other times have been treated as two separate projects … but this distinction is immaterial to the outcome of this Motion."); Mot. at 7 n.4 ("[T]he projects called Bueno and Trolley, to the extent they might be considered different projects, were addressed within the same settlement agreement.").
[77] See Compl. ¶ 45; see also Mot. at 8 (referencing Ex. 7 to Mot.).
[78] Id.

attorneys in escrow. Once everything is signed, we can release signatures and Kayne can initiate wires. Does that process work for everyone? Can we get this signed and funded tomorrow?[79]

Kayne did not respond to Alta's email of July 23, 2024.[80]

On July 24, 2024, Alta's counsel sent Kayne's counsel executed signature pages, signed by Mr. Augustine, for each of the four Settlement Agreements.[81] The email states:

> [A]ttached hereto are [Alta's] signature pages to the four settlements agreements, delivered to you in escrow. Please coordinate signature with Kayne, compile fully executed settlement agreements and deliver them to me in escrow. The attached signatures are not to be released from escrow and effective until I have received fully executed and compiled settlement agreements and confirmation that Kayne is prepared to initiate the required wire transfers. Hopefully we can accomplish this today. We reserve the right to recall and withdraw these signatures at any time prior to completion of the transaction. Please confirm receipt and acceptance of the escrow instructions.[82]

Kayne did not respond to Alta's email of July 24, 2024.[83]

The next day, on July 25, 2024, Alta's counsel sent Kayne's counsel an email stating, "I have not heard back from you. Please confirm receipt of the documents and acceptance of escrow. Also, please provide a status update."[84] Kayne's counsel responded later the same day, stating, "Yes, we are holding in escrow. I've been tied up on other matters, but am following up."[85]

Alta's counsel sent Kayne's counsel another email on July 30, 2024, stating:

> All – as we indicated last week, the settlement agreements are all final as Kayne last presented them. We have provided wire instructions and W-9s. We have provided [Kayne's counsel] with all signatures in escrow and are ready to close on

---

[79] Mot. at 9 (referencing Ex. 7 to Mot.).
[80] *See id.* at 9.
[81] *See* Compl. ¶ 46 (referencing Exs. 1-4 to Compl., copies of the Settlement Agreements); *see also* Mot. at 9 (referencing Ex. 9 to Mot.).
[82] *Id.*
[83] *Id.*
[84] *See* Compl. ¶ 47; *see also* Mot. at 9-10 (referencing Ex. 14 to Mot.).
[85] *Id.*

10

this transaction. Please advise on status of Kayne's signatures and the wires. We would like to close this transaction today or tomorrow.[86]

Kayne contends that during this time, Kayne "discovered major discrepancies between [Project] records and actual costs incurred, especially on the Sugar House Project. … [F]or example, Slopeside Manager's change order log dated May 8, 2024, showed at credit of $1,064,101.19 for deleted work. In actuality, there was $3,485,466.14 in unpaid change orders pending, a discrepancy of over $4.5 million."[87] Kayne continues:

> Just as [Kayne] was beginning to understand the true status of the Alta Projects, [Alta] executed the draft settlement agreements. … Kayne determined that it needed to further investigate whether the parties' settlement terms were reasonable given the new information it was learning about the Alta Projects and, therefore, elected not to sign the draft settlement agreements. … [Kayne] ultimately discovered that the financial and other records provided by [Alta] during settlement negotiations concealed material information. With respect to the Sugar House Project, [Alta] concealed actual construction costs, the true status of subcontractor buyout, improper use of the Makers Line construction line of credit, and other evidence of mismanagement of the Sugar House Project. In addition, Mr. Zogby and Mr. Augustine misrepresented the actual status of the Alta Projects during settlement negotiations.[88]

Alta and Mr. Zogby deny all allegations of wrongdoing.[89]

On August 14, 2024, Kayne sent Alta an "Excess Projects Costs Notice" on the Sugar House Project.[90] Kayne claimed that Alta is "100% responsible" for $2,269,686.40 in excess project costs, and that failure to pay would result in a default under the Sugar House JV Agreement.[91]

---

[86] *See* Compl. ¶ 48; *see also* Mot. at 10 (referencing Ex. 15 to Mot.).
[87] *See* Kayne Countercl. ¶¶ 118-120.
[88] *See id.* ¶¶ 121-125.
[89] *See* Zogby Answer ¶¶ 118-125; *see also* Alta Reply ¶¶ 118-125.
[90] *See* Compl. ¶ 49.
[91] *See id.*

On August 19, 2024, Alta's counsel sent an email to Kayne's counsel stating that the Excess Projects Costs Notice is ineffective because the claim releases set forth in the settlement agreements are material terms and binding.[92]

On September 6, 2024, Kayne's counsel responded to Alta's counsel.[93] Kayne's counsel stated that the settlement agreements are not enforceable because they are unexecuted drafts.[94]

Kayne contends that after analyzing the documents provided by Alta during these negotiations, Kayne determined Alta mismanaged all the Projects.[95] Kayne also alleges that Mr. Zogby and Mr. Augustine: (i) intentionally concealed evidence of their mismanagement of the Projects;[96] and (ii) fraudulently induced Kayne to enter into settlement negotiations.[97] Alta and Mr. Zogby deny these allegations.[98]

## II.  PARTIES' CONTENTIONS

### A. MOTION

#### 1. *Alta and Mr. Zogby*

Alta and Mr. Zogby assert that the parties entered into binding and enforceable settlement agreements on July 23, 2024.[99] Alta and Mr. Zogby argue that Kayne made an offer on July 23, 2024, when it emailed the settlement agreements to Alta.[100] Alta and Mr. Zogby maintain that Alta accepted Kayne's offer by replying, "these drafts are approved as final."[101] Alta and Mr. Zogby also contend that granting the Motion will resolve all liability issues in this case.[102] Alta

---

[92] *See id.* ¶ 51; *see* Kayne Countercl. ¶ 129 (referencing Ex. I to Kayne Countercl.).
[93] *See* Kayne Countercl. ¶ 130 (referencing Ex. J to Kayne Countercl.).
[94] *See id.*
[95] *See id.* ¶ 153.
[96] *See id.* ¶¶ 162-168.
[97] *See id.* ¶ 169.
[98] *See* Zogby Answer ¶ 153; *see also* Alta Reply ¶ 153.
[99] *See* Mot. at 3.
[100] *See id.*
[101] *See id.*
[102] *See id.* at 1, 3.

and Mr. Zogby request that the Court allow this matter to proceed only on the issue of Alta's damages.[103] Further, Alta and Mr. Zogby maintain that Kayne fails to properly assert its affirmative defense of fraudulent inducement.[104] Alta and Mr. Zogby also contend that Kayne's Counterclaims of fraud and intentional misrepresentation fail because: (i) the settlement agreements bar such claims; (ii) the claims are not pled with the particularity required by Rule 9(b); and (iii) the economic loss doctrine bars the claims.[105]

### 2. *Kayne*

Kayne argues that the Motion is improper under Civil Rule 12(c) because it relies on matters outside the pleadings, such as "multiple emails, including with third parties[.]"[106] Thus, Kayne asserts that the Court must consider the Motion as a motion for summary judgment.[107]

Kayne next contends that if the Court does not consider matters outside the pleadings, there exist material issues of fact as to whether the settlement agreements are enforceable.[108] Kayne claims that it did not provide an offer to Alta, and even if it did, Alta did not accept; instead, Alta made a counteroffer that was never accepted by Kayne.[109]

Kayne maintains that even if the Court finds that the settlement agreements are enforceable, its well-pleaded fraudulent misrepresentation affirmative defense precludes an entry of judgment in Alta's favor.[110] Further, Kayne disputes Alta's argument that the settlement agreements bar Kayne's fraudulent inducement affirmative defense.[111] While the clauses state

---

[103] *See id.*
[104] *See id.* at 27-30.
[105] *See id.* at 13, 30-32.
[106] *See* Opp'n at 9.
[107] *See id.*
[108] *See id.* at 11.
[109] *Id.* at 24. To further support its argument, Kayne references text messages between Kayne and Alta executives from August 2024. However, the Court will not consider these text messages at this stage because they are not included or referenced in either Alta's Complaint or Kayne's Counterclaim.
[110] *See id.* at 24-25.
[111] *See id.* at 27.

13

that the written agreement replaces all prior discussions or promises, the clauses fail to state that Kayne did not rely on any of Alta's earlier statements, especially concerning the financial condition of the Projects.[112]  Kayne argues that under Delaware law, this type of standard contract language does not preclude Kayne from claiming that Alta fraudulently induced Kayne into entering settlement negotiations.[113]

Kayne asserts that it has adequately pled its fraud claims under Civil Rule 9(b).[114] Kayne asserts that it sufficiently alleges that Mr. Zogby and Mr. Augustine made false representations and material omissions concerning the Projects.[115]  In addition, Kayne argues that the economic loss doctrine does not apply to its fraud claims.[116]  Kayne also contends that the doctrine often does not apply when the parties are not in privity.[117]

### B. THE MOTION TO STAY

#### 1. *Alta and Mr. Zogby*

Alta and Mr. Zogby ask the Court for a "brief stay of discovery … until the Court decides the dispositive Motion."[118]  Alta and Mr. Zogby maintain that the Motion disposes of every issue in the case except for damages, "and will correspondingly narrow the scope of discovery."[119] Alta and Mr. Zogby argue that "it would be wasteful to force Alta and Mr. Zogby to engage in discovery on issues that may not survive the pleading stage.  Requiring Alta and Mr. Zogby to respond to Kayne's discovery requests before the Court has ruled on the Motion will result in an

---

[112] *See id.* at 28.
[113] *See id.*
[114] *See id.* at 30.
[115] *Id.* (citing Kayne Countercl. ¶¶ 162-164).
[116] *See id.* at 32.
[117] *See id*.
[118] Mot. to Stay Disc. at 3.
[119] *Id.* at 4.

14

uneconomical waste of resources and impose a significant and potentially unnecessary burden upon Alta and Mr. Zogby."[120]

Alta and Mr. Zogby also contend that Kayne's discovery requests "are not narrowly tailored" and that the "number of discovery requests would be overly burdensome, disproportionate to the needs of the case, and objectionable."[121]

### 2. *Kayne*

Kayne contends that Alta and Mr. Zogby are seeking to deprive Kayne of access to the discovery process to continue covering up their wrongdoings.[122] "Alta is not trying to save Kayne money in discovery. It is trying to have the Court shield its bad acts from exposure."[123]

Kayne also argues that this is not an instance in which the Court should use its "sparing discretion" to grant a discovery stay because: (i) the Motion would only partially resolve the case, so discovery would take place anyway;[124] (ii) a protective order would provide the relief Alta and Mr. Zogby are seeking;[125] and (iii) Kayne would face a risk of prejudice because "[i]f the Court were to deny Alta's Motion for Partial Judgment on the Pleadings on July 7, 2025, this would leave only a year for the parties to begin and complete discovery."[126]

## III. STANDARD OF REVIEW

### A. MOTION FOR JUDGMENT ON THE PLEADINGS

A party may move for judgment on the pleadings pursuant to Civil Rule 12(c). In determining a motion under Civil Rule 12(c) for judgment on the pleadings, the Court is required

---

[120] *Id.*
[121] *Id.*
[122] *See* Opp'n to Mot. to Stay Disc. at 1.
[123] *Id.* at 2.
[124] *See id.* at 3-4.
[125] *See id.* at 6.
[126] *Id.* at 7.

15

to view the facts pled and the inferences to be drawn from such facts in a light most favorable to the non-moving party.[127] The Court must take the well-pled facts alleged in the complaint as admitted.[128] When considering a motion under Civil Rule 12(c), the Court also assumes the truthfulness of all well-pled allegations of fact in the complaint.[129] The Court must, therefore, accord parties opposing a Civil Rule 12(c) motion the same benefits as a party defending a motion under Civil Rule 12(b)(6).[130]

However, a court will "not rely upon conclusory allegations . . . [and] neither inferences nor conclusions of fact unsupported by allegations of specific facts . . . are accepted as true."[131] Further, "[a] trial court need not blindly accept as true all allegations, nor must it draw all inferences from them in plaintiffs' favor unless they are reasonable inferences."[132] Yet, if the non-moving party "presents any reasonably conceivable set of facts susceptible of proof to support its claim, the motion against it must be denied. A complaint will not be dismissed unless it is clearly without merit. 'Vagueness or lack of detail' is not enough for dismissal."[133]

With these considerations in mind, the Court may grant a motion for judgment on the pleadings only when no material issue of fact exists, and the movant is entitled to judgment as a matter of law.[134]

---

[127] *See Desert Equities, Inc. v. Morgan Stanley Leveraged Equity Fund, II, L.P.*, 624 A.2d 1199, 1205 (Del. 1993); *see also Warner Commc'ns, Inc. v. Chris–Craft Indus., Inc.*, 583 A.2d 962, 965 (Del. Super.), *aff'd without opinion*, 567 A.2d 419 (Del. 1989).
[128] *See Desert Equities, Inc.*, 624 A.2d at 1205; *Warner Commc'ns, Inc.*, 583 A.2d at 965.
[129] *See McMillan v. Intercargo Corp.*, 768 A.2d 492, 500 (Del. Ch. 2000).
[130] *See id.*
[131] *Id.* (internal citations omitted).
[132] *Id.* (internal citations omitted).
[133] *Velocity Exp., Inc. v. Office Depot, Inc.*, 2009 WL 406801, at *4 (Del. Super. 2009) (internal citations omitted).
[134] *See Desert Equities, Inc.*, 624 A.2d at 1205; *Warner Commc'ns, Inc.*, 583 A.2d at 965.

## B. THE "PLEADINGS" CONSIDERED.

On a Civil 12(c) motion, the Court considers all pleadings, including the complaints, answers, "documents integral to the pleadings," such as those attached as exhibits or incorporated by reference, and facts subject to judicial notice.[135]

## IV. DISCUSSION

### A. THE COURT FINDS THAT ALTA'S MOTION SHOULD BE CONSIDERED AS A MOTION FOR JUDGMENT ON THE PLEADINGS, NOT SUMMARY JUDGMENT.

Civil Rule 12(c) states in relevant part:

> If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the Court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.[136]

Here, Kayne argues that the Court should consider the Motion as a motion for summary judgment because it relies on matters outside the pleadings, including "multiple emails, including with third parties, and other documents upon which there has been no opportunity for deposition or other examination in discovery."[137]

Alta asserts that in deciding a motion for judgment on the pleadings, the Court can "consider documents integral to the pleadings, including documents incorporated by reference and exhibits attached to the pleadings."[138]  Alta contends that the exhibits attached to its Motion "were referenced and relied upon in the Complaint or attached to it.  Throughout, the Motion

---

[135] *Jiménez v. Palacios,* 250 A. 3d 814, 827 (Del. Ch. 2019); *accord Patheon Biologics LLC v. Humanigen Inc.*, 2023 WL 5041233, at *1 (Del. Super. July 31, 2023); *see also Intermec IP Corp. v. TransCore, LP*, 2021 WL 3620435, at *8 (Del. Super. Aug. 16, 2021) ("[T]he Court can consider, limitedly, documents outside the pleadings but integral to and incorporated referentially into them.").
[136] Del. Super. Ct. Civ. R. 12(c).
[137] *See* Kayne Opp'n at 9.
[138] *See* Reply Br. at 12 (quoting *Jimenez v. Palacios*, 250 A.3d 814, 827 (Del. Ch. 2019), *as revised* (Aug. 12, 2019), *aff'd*, 237 A.3d 68 (Del. 2020)).

generally cites to the paragraph of the pleading in which a document was referenced when introducing the exhibit."[139]

The Court finds that Alta does not rely on matters outside of the pleadings in the Motion. Alta specifically references each of the Motion's exhibits in its Complaint. Alta references the July 23, 2024, email thread in Complaint Paragraphs 44 and 45 and includes the email thread as Exhibits 7 and 15 of the Motion. Alta references the July 24, 2024, email thread in Complaint Paragraph 46 and includes the email thread as Exhibit 14 of the Motion. Alta references the July 25, 2024, email thread in Complaint Paragraph 47 and includes the thread in Exhibit 14 of the Motion. Further, Alta references the July 30, 2024, email thread in Paragraph 48 of its Complaint and includes that thread in Exhibit 15 of the Motion.

### B. THE COURT WILL DENY THE MOTION BECAUSE MATERIAL ISSUES OF FACT EXIST AS TO THE ELEMENTS OF OFFER, ACCEPTANCE, AND AN INTENT TO BE BOUND.

"A valid contract requires an offer, acceptance, and consideration, and the parties must have intended that the contract would bind them."[140]

"Delaware courts favor the negotiated settlement of contested legal disputes and enforces them as contracts."[141] "Settlement agreements are binding where the parties agree to all the material terms and intend to be bound by that contract, whether or not the contract is in writing."[142] "A party seeking to enforce a purported agreement has the burden of proving the existence of a contract by a preponderance of the evidence."[143] In determining if the movant has

---

[139] *Id.*

[140] *Shilling v. Shilling*, 332 A.3d 453, 462 (Del. 2024) (quoting *Trexler v. Billingsley*, 166 A.3d 101, 2017 WL 2665059, at *3 (Del. 2017) (TABLE)).

[141] *Alatus Aerosystems v. Triumph Aerostructures, LLC*, 2021 WL 6122106, at *5 (Del. Super. Dec. 27, 2021) (citing *Delphi Petroleum, Inc. v. Magellan Terminal Holdings, L.P.*, 2020 WL 1972857 at *5 (Del. Super. Apr. 23, 2020)); *Clark v. Ryan*, 1992 WL 163443, at *5 (Del. Ch. June 12, 1992)).

[142] *Id.* (citing *Schwartz v. Chase*, 2010 WL 2601608, at *4 (Del. Ch. June 29, 2010)).

[143] *Id.*

18

met its burden, the Court must ask "whether a reasonable negotiator in the position of one asserting the existence of a contract would have concluded, in that setting, that the agreement reached constituted agreement on all of the terms that the parties themselves regarded as essential and thus that that agreement concluded the negotiations and formed a contract."[144]

### 1. *The Court finds that an issue of material fact exists as to whether Kayne made Alta an offer on July 23, 2024.*

To form a contract in Delaware, an offer must be made by one person or entity to another.[145] "An offer means the signification by one person to another of his willingness to enter into a contract with him on the terms specified in the offer."[146] "But a 'mere statement of a person's willingness to enter negotiations with another person is in no sense an offer, and cannot be accepted so as to form a binding contract.'"[147]

"Delaware courts have often looked to the Restatement (Second) of Contracts as persuasive authority for interpreting basic contract principles[.]"[148] Restatement (Second) of Contracts § 27 states: "Manifestations of assent that are in themselves sufficient to conclude a contract will not be prevented from so operating by the fact that the parties also manifest an intention to prepare and adopt a written memorial thereof; *but the circumstances may show that the agreements are preliminary negotiations*."[149]

---

[144] *Id.*
[145] *See Loveman v. Nusmile, Inc.*, 2009 WL 847655, at *3 (Del. Super. Mar. 31, 2009).
[146] *Id.* (quoting *Salisbury v. Credit Servs.*, 199 A. 681 (Del. Super. 1937).
[147] *Hyetts Corner, LLC v. New Castle Cnty.*, 2021 WL 4166703, at *7 (Del. Ch. Sept. 14, 2021) (quoting *Salisbury*, 199 A. at 681).
[148] *Thompson St. Cap. Partners IV, L.P. v. Sonova United States Hearing Instruments, LLC*, 340 A.3d 1151, 1169 (Del. 2025).
[149] Restatement (Second) of Contracts § 27 (1981) (emphasis added).

Alta and Mr. Zogby argue that Kayne's email of July 23, 2024, was an offer.[150] The email states, "See attached **for further revised drafts** of the Settlement Agreements, clean and redline against the **prior drafts** of each. **Please let us know of any questions or comments**."[151]

The Court finds that there is an issue of material fact as to whether Kayne made an offer to Alta on July 23, 2024. To the Court, this communication does not clearly indicate a willingness to enter a binding contract with Alta. First, Kayne's use of the word "further" may indicate that Kayne intended this communication to be a part of the parties' continuing negotiations. Second, Kayne attaching its "revised drafts" along with the parties' "prior drafts" may indicate that Kayne assumed that the negotiations were ongoing. Third, Kayne stating "[p]lease let us know of any questions or comments" appears to show that its drafts were tentative while awaiting feedback from Alta. These all may be considered examples of "direct language indicating an intent to defer the formation of a contract."

At this stage in the proceedings, the Court finds that the record is unclear on whether Kayne manifested a willingness to be bound by the terms contained in the revised drafts, or whether Kayne was merely negotiating with Alta. Accordingly, the Court **DENIES** the Motion with respect to Alta's request that the Court enforce the settlement agreements because an issue of material fact exists as to whether Kayne's communication of July 23, 2024, constitutes a valid offer.

### 2. *The Court also finds that an issue of material fact exists as to whether Alta accepted Kayne's offer on July 23, 2024.*

Acceptance of an offer occurs when a party "expresses his or her intent to accept the offer, by word, sign, writing or act, communicated or delivered to the person making the

---

[150] *See* Compl. ¶ 44; *see also* Mot. at 3, 17 (referencing Exs. 2-6 to Mot.).
[151] *See* Ex. 2 to Mot. (emphasis added).

20

offer."[152]  The offeree must unconditionally accept the offer on identical terms.[153]  "It is basic that overt manifestation of assent ... controls the formation of a contract."[154]  "Once an offer is accepted, there is a binding contract."[155]  However, "if a reply to an offer purports to accept that offer but attaches conditions or qualifications that require additional performance by the offeror, such a reply is not an acceptance but is, instead, a counteroffer."[156]

Alta and Mr. Zogby argue that Alta's response to Kayne's July 23, 2024, email constituted acceptance.[157]  Kayne argues that even if its email constituted an offer, Alta did provide acceptance; rather, Alta made a counteroffer that Kayne never accepted.[158]

As stated above, an issue of material fact exists as to whether Kayne made Alta an offer. Thus, Alta's purported acceptance cannot bind Kayne unless Kayne initially made the offer to Alta.  In other words, there cannot be a valid acceptance without a valid offer.  Still, even if the Court found that Kayne made an offer, an independent issue of material fact exists as to whether Alta's response constitutes a valid acceptance.

The July 23, 2024, email first states: "Kayne Team – these drafts are approved as final."[159]  Taken alone, this language likely establishes that Alta manifested a willingness to be bound by the identical terms of Kayne's purported offer.  However, Alta continues by stating, "[Alta's counsel] will coordinate signature with [Alta] and I assume [Kayne's counsel] will coordinate with Kayne.  ***We can exchange signature pages*** among the attorneys in escrow. ***Once everything is signed***, we can release ***signatures*** and Kayne can initiate wires.  Does that

---

[152] *In re AMC Invr's. LLC*, 637 B.R. 43, 62 (Bankr. D. Del. 2022), *aff'd*, 656 B.R. 95 (D. Del. 2024).
[153] *See Hyetts Corner, LLC*, 2021 WL 4166703, at *7.
[154] *In re AMC Inv'rs, LLC* (quoting *Leeds v. First Allied Connecticut Corp.*, 521 A.2d 1095, 1101 (Del. Ch. 1986)).
[155] *Id.*
[156] *Schwartz*, 2010 WL 2601608, at *7.
[157] *See* Mot. at 3.
[158] *See* Opp'n at 24.
[159] *See* Compl. ¶ 45; *see also* Mot. at 8 (referencing Ex. 7 to Mot.).

21

process work for everyone? ***Can we get this signed*** and funded tomorrow?"[160] This language could be construed as Alta adding an additional term not found in Kayne's purported offer—specifically, that the signatures of *both* parties are required to make the settlement agreements binding. As such, a factual issue exists as to whether Alta's response should be considered an unconditional acceptance or a counteroffer.

Again, on this record, the Court **DENIES** the Motion with respect to Alta's request that the Court enforce the settlement agreements because an issue of material fact exists as to whether Alta's response of July 23, 2024, constitutes a valid acceptance.

### 3. In addition, the Court finds that an issue of material fact exists as to whether Alta and Kayne intended to be bound to the settlement agreements.

The question of whether the parties intended to be bound by the contract is a question of fact that "looks to the parties' intent as to the contract as a whole, rather than analyzing whether the parties possess the requisite intent to be bound by each particular term."[161] "Under Delaware law, 'overt manifestation of assent—not subjective intent—controls the formation of a contract.'"[162] "When applying this objective test to determine 'whether the parties intended to be bound, the Court reviews the evidence that the parties communicated to each other up until the time that the contract was signed[.]'"[163]

Kayne asks the Court to rely on *Schwartz v. Chase*,[164] where "the Court concluded that the draft settlement agreement was not enforceable because, at the onset of negotiations, the

---

[160] Mot. at 8-9 (referencing Ex. 7 to Mot.).
[161] *Alatus Aerosystems*, 2021 WL 6122106, at *8 (quoting *Eagle Force Holdings, LLC v. Stanley V. Campbell,* 187 A.3d 1209, 1230 (Del. 2018)).
[162] *Id.* (quoting *Black Horse Capital, LP v. Xstelos Holdings, Inc.*, 2014 WL 5025926, at *12 (Del. Ch. Sept. 30, 2014)); *Indus. Am., Inc. v. Fulton Indus., Inc.*, 285 A.2d 412, 415 (Del. 1971)).
[163] *Id.* (citing *Eagle Force*, 187 A.3d at 1229).
[164] 2010 WL 2601608, at *8 (Del. Ch. June 29, 2010)).

22

plaintiff had indicated that it 'would not even consider whether to accept the terms of the Settlement Agreement until after Chase had signed that document.'"[165] Kayne continues:

> Here, Kayne's reservation was even more clear than the reservation made in *Schwartz*. [On June 25, 2024,] Kayne expressly indicated that the agreements were not final "**until executed**." … Moreover, Alta made a similar reservation [on July 24, 2024], explaining that the agreements were not "effective until [its counsel had] received **fully executed** and compiled settlement agreements and confirmation that Kayne is prepared to initiate the required wire transfers." … Accordingly, a reasonable person would not believe that Kayne intended to be bound by the unexecuted, draft settlement agreements, until (and unless) Kayne actually executed the documents.[166]

Alta and Mr. Zogby argue that Kayne's signature was not a condition precedent to contract formation.[167] "'[S]ettlements may be enforced even in the absence of a signed writing.' Similarly, the fact that the parties intended to memorialize the settlement later does not render the settlement unenforceable."[168] Alta and Mr. Zogby contend that the lack of a signed contract can only prevent a settlement from becoming effective if the '[p]arties positively agreed that there will be no binding contract until execution.'"[169] Alta and Mr. Zogby assert that Kayne "cannot demonstrate the existence of any 'positive agreement' that the Settlement Agreements had to be executed by Kayne, because no such agreement ever existed."[170] Alta and Mr. Zogby further contend that *Loppert v. WindsorTech, Inc.*, not *Schwartz*, is the controlling precedent because like *Loppert*, Kayne is attempting to "renege by claiming, after the fact, that its signature was required before the settlement became effective."[171]

---

[165] Opp'n at 15.
[166] *Id.* at 15-16 (emphasis supplied).
[167] *See* Reply Br. at 2.
[168] *Id.* (citing *Schwartz*, 2010 WL 2601608, at *4); *Stone Creek Custom Kitchens & Design v. Vincent*, 2016 WL 7048784, at *3 (Del. Super. Dec. 2, 2016); *Sarissa Capital Dom. Fund LP v. Innoviva, Inc.*, 2017 WL 6209597, at *21 (Del. Ch. Dec. 8, 2017)).
[169] *Id.* at 2-3 (quoting *Loppert v. WindsorTech, Inc.*, 865 A.2d 1282, 1287 (Del. Ch. 2004), *aff'd*, 867 A.2d 903 (Del. 2005); *accord Shilling*, 2024 WL 4960326, at *8).
[170] *Id.* at 3.
[171] *Id.* at 9.

The Court finds that, even if there is a valid offer and acceptance, an independent issue of material fact exists regarding whether *both* parties intended to be bound by the settlement agreements. The evidence, as described in detail above, shows that "up until the time that the contracts were signed" by Alta on July 23, 2024, Alta may have intended to be bound by the settlement agreements, but Kayne may not have intended to be bound. Discovery should resolve this factual issue.

Moreover, the Court's analysis does not end with consideration of only the parties' communications of July 23, 2024. "Delaware courts have also said that … the court may consider evidence of the parties' prior or contemporaneous agreements and negotiations in evaluating whether the parties intended to be bound by the agreement."[172] Because material issues of fact exist as to whether the parties' July 23, 2024, communications resulted in a valid contract or were mere negotiations, the Court may also look to the parties' communications after July 23, 2024, to evaluate whether they both intended to be bound by the settlement agreements.

On July 24, 2024, Alta's counsel sent an email enclosing Kayne's counsel executed signature pages, stating:

> [A]ttached hereto are [Alta's] signature pages to the four settlements agreements, delivered to you in escrow. ***Please coordinate signature with Kayne***, ***compile fully executed settlement agreements and deliver them to me in escrow. The attached signatures are not to be released from escrow and effective until I have received fully executed and compiled settlement agreements*** and confirmation that Kayne is prepared to initiate the required wire transfers. Hopefully we can accomplish this today. We reserve the right to recall and withdraw these signatures at any time prior to completion of the transaction. Please confirm receipt and acceptance of the escrow instructions.[173]

This communication seems to show that although Alta signed the settlement agreements, Alta may not have intended to be bound to these agreements until Kayne signed and delivered

---

[172] *Eagle Force*, 187 A.3d at 1230.
[173] *See* Mot. Ex. 9 (emphasis added).

them to Alta. Kayne did not respond to Alta's email, which may indicate that Kayne did not intend to be bound by the settlement agreements on this date. This communication creates a material issue of fact as to whether either party intended to be bound.

On July 25, 2024, Alta's counsel sent Kayne's counsel another email stating, "I have not heard back from you. Please confirm receipt of the documents and acceptance of escrow. Also, please provide a status update."[174] Kayne's counsel responded the same day, stating, "***Yes, we are holding in escrow***. I've been tied up on other matters, but am following up."[175] Unlike the prior communication, this email indicates that Kayne may have intended to be bound because it affirmatively states that it was holding in escrow. Taken together with prior communications, this email creates a material issue of fact as to whether Kayne intended to be bound.

On July 30, 2024, Alta's counsel sent Kayne's counsel another email stating, in relevant part, "We have provided [Kayne's counsel] with all signatures in escrow and ***are ready to close on this transaction***. ***Please advise on status of Kayne's signatures*** and the wires. We would like to close this transaction today or tomorrow."[176] Again, this communication shows that Alta may not have intended to be bound by the settlement agreements until Kayne provided its executed signature pages. Taken together with prior communications, this email creates a material issue of fact as to whether Alta intended to be bound.

The Court finds that issues of material fact remain on Alta's request that the Court enforce the settlement agreements because an issue of material fact exists as to whether both parties intended to be bound. In conclusion, because material issues of fact exist as to the elements of offer, acceptance, and an intent to be bound, the Court must **DENY** the Motion.

---

[174] *See* Compl. ¶ 47; *see also* Mot. at 9-10 (referencing Ex. 14 to Mot.).
[175] *Id.* (emphasis added).
[176] *See* Compl. ¶ 48; *see also* Mot. at 10 (referencing Ex. 15 to Mot.) (emphasis added).

## C. THE COURT WILL DENY THE MOTION AS TO KAYNE'S FRAUDULENT INDUCEMENT AFFIRMATIVE DEFENSE AND FRAUD COUNTERCLAIMS.

In its Answer, Kayne asserts a fraudulent inducement affirmative defense.[177] In its Counterclaim, Kayne's asserts a claim for fraud against Mr. Zogby and Mr. Augustine (Count I) and a claim for intentional misrepresentation against Mr. Zogby and Mr. Augustine (Count II).[178] In the Motion, Alta and Mr. Zogby argue that Kayne fails to properly assert its affirmative defense of fraudulent inducement.[179] Alta and Mr. Zogby also contend that Kayne's Counterclaims of fraud and intentional misrepresentation fail because: (i) the settlement agreements bar such claims; (ii) they are not pled with the particularity required by Rule 9(b); and (iii) they are barred by the economic loss doctrine.[180]

### 1. *The Court finds that Kayne properly asserts its fraudulent inducement affirmative defense.*

Under Civil Rule 9(b), a party must plead fraud and negligence with particularity.[181] To plead fraud or negligence with the particularity required by Rule 9(b), a party must include the "time, place, contents of the alleged fraud or negligence, as well as the individual accused of committing the fraud" or negligence.[182]

"If a party's manifestation of assent is induced by either a fraudulent or a material misrepresentation by the other party upon which the recipient is justified in relying, the contract is voidable by the recipient."[183] To prevail on a fraudulent inducement defense, the asserting

---

[177] Kayne Answer at ¶ 23.
[178] Kayne Countercl. At ¶¶ 57-61.
[179] *See* Mot. at 27-30.
[180] *See id.* at 13, 30-32.
[181] Del. Super. Ct. Civ. R. 9(b); *see Flowshare, LLC v. GeoResults, Inc.*, 2018 WL 3599810, at *3 (Del. Super. July 25, 2018).
[182] *Flowshare, LLC*, 2018 WL 3599810, at *3 (quoting *TrueBlue, Inc., v. Leeds Equity Partners IV, LP*, 2015 WL 5968726, at *6 (Del. Super. Sept. 25, 2015)).
[183] *Lynch v. Gonzalez*, 2020 WL 4381604, at *35 (Del. Ch. July 31, 2020), *aff'd*, 253 A.3d 556 (Del. 2021) (quoting Restatement (Second) of Contracts § 164 (1981)).

26

party must prove the following elements: (i) a false representation, usually one of fact, made by the other party; (ii) the other party's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (iii) an intent to induce the asserting party to act or to refrain from acting; [and] (iv) the asserting party's action or inaction taken in justifiable reliance upon the representation.[184]

Kayne asserts in its Answer that "Alta's claims are barred because [Kayne was] fraudulently induced into negotiating the settlement agreements as far as they did by [Alta's] misrepresentations and omissions about the financial condition and development of the Projects."[185]  Kayne claims that it did not learn of Alta's wrongdoings until after taking over the Projects and entering the settlement negotiations.[186]

In their Answer and Reply to Kayne's Counterclaims, Alta and Mr. Zogby deny all allegations of wrongdoing.[187]  In the Motion, Alta and Mr. Zogby contend that Kayne's fraudulent misrepresentation affirmative defense fails on the justifiable reliance element.[188] "Delaware courts have consistently held that 'sophisticated parties to negotiated commercial contracts may not reasonably rely on information that they contractually agreed did not form a part of the basis for their decision to contract.'"[189]

Alta and Mr. Zogby assert that the settlement agreements contain such language, thus barring Kayne from claiming that it was fraudulently induced into entering the settlement

---

[184] *Id.* (citing *Standard Gen. L.P. v. Charney*, 2017 WL 6498063, at *12 (Del. Ch. Dec. 19, 2017) (quoting *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000), *aff'd*, 195 A.3d 16 (Del. 2018)).
[185] Kayne Answer at 23.
[186] *See id.* ¶ 153.
[187] *See* Zogby Answer ¶¶ 118-125.
[188] Mot. at 28.
[189] *Id.* (quoting *H-M Wexford LLC v. Encorp, Inc.*, 832 A.2d 129, 142, n.18 (Del. Ch. 2003)).

negotiations.[190]  Specifically, the settlement agreements include a **[REDACTED------------------**
**------------------------------------------------------]** stating:

> **[REDACTED------------------------------------------------------------------------------**
> **------------------------------------------------------------------------------------------**
> **------------------------------------------------------------------------------------------**
> **------------------------------------------------------------------------------------------**
> **------------------------------------------------------------------------------------------**
> **------------------------------------------------------------------------------------------**
> **------------------------------------------------------------------------------------------**
> **-------------------------]**.[191]

In its Opposition, Kayne argues that under Delaware law, integration clauses included in unexecuted, draft settlement agreements are not the type of clauses that bar a fraudulent inducement claim.[192]  Even if the settlement agreements are binding, Kayne argues that the instant integration clauses do not contain **[REDACTED-------------------------------------------------**
**-------------------------------------------------]**.[193]  Kayne maintains that the clauses fail to state that **[REDACTED-------------------------------------------------------------------------------------**
**-------------------------]**.[194]  Kayne asserts that under Delaware law, this type of standard contract language does not bar Kayne from claiming that Alta fraudulently induced Kayne into entering settlement negotiations.[195]  Kayne contends that the clauses "simply operate[] to police the variance of the agreement by parol evidence."[196]

---

[190] *See id.* at 28-29.
[191] **[REDACTED]**
[192] *See* Opp'n at 27.
[193] **[REDACTED]**
[194] **[REDACTED]**
[195] *See id.*:
> To be effective, a contract must contain language that, when read together, can be said to add up to a clear anti-reliance clause by which the [relevant party] has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract. … The presence of a standard integration clause alone, which does not contain explicit anti-reliance representations and which is not accompanied by other contractual provisions demonstrating with clarity that the [party] had agreed that it was not relying on facts outside the contract, will not suffice to bar fraud claims.

(quoting *Adviser Invs, LLC v. Powell*, 2023 WL 6383242, at *5 (Del. Ch. Sept. 29, 2023)).
[196] *Id.* at 29.

The Court finds that, at the pleading stage, Kayne properly asserts its fraudulent inducement affirmative defense. To satisfy the first element of fraudulent misrepresentation, Kayne alleges that Mr. Zogby and Mr. Augustine: (i) falsely represented "construction costs, the progress of the work, subcontractor buyouts, and the status of payments to subcontractors during construction and settlement negotiations related to the Projects;"[197] (ii) fraudulently concealed documents which "would have accurately described construction costs, the progress of the work, subcontractor buyout, and the status of payments to subcontractors during construction, and settlement negotiations related to the projects;"[198] and (iii) submitted false applications for payment and reallocated the Projects' schedule of values to deceive Kayne.[199]

For the second element, Kayne alleges that Mr. Augustine and Mr. Zogby "knew that these affirmative misrepresentations and omissions were false when made" because of their roles at Kayne and their involvement with the Projects.[200] For the third element, Kayne contends that Mr. Augustine and Mr. Zogby made these misrepresentations and omissions to induce Kayne to enter into the settlement agreements.[201] For the fourth element, Kayne alleges that it justifiably relied upon Alta's representations "when Kayne was making critical business decisions about the Projects, including negotiating settlement."[202]

Because Kayne raises a well-pleaded challenge to the formation of the settlement agreements, the Court notes that it follows that a material fact issue exists to preclude granting a judgment on the pleadings.[203] In other words, because there are material issues of fact

---

[197] Kayne Countercl. ¶ 162.
[198] *Id.* ¶ 164.
[199] *See id.* ¶¶ 166-67.
[200] *See id.* ¶¶ 38, 41, 168.
[201] *See id.* ¶ 169.
[202] *Id.* ¶¶ 163, 165.
[203] *See Wonnum v. State*, 942 A.2d 569, 574 (Del. 2007) ("When the defendant presents some evidence capable of being believed, on each of the elements of an affirmative defense, whether the defendant has proved the affirmative defense by a preponderance of the evidence is a jury question.")

surrounding whether a valid contract exists at this stage of litigation, the Court cannot currently enforce a term—like an anti-reliance clause or integration clause—from the potentially non-binding contract.

Therefore, the Court **DENIES** the Motion with respect to Alta's request to dismiss Kayne's affirmative defense of fraudulent inducement.

### 2. *The Court finds that Kayne pleads its fraud Counterclaim (Count I) with enough particularity.*

In its Counterclaims, Kayne asserts a fraud claim against Mr. Augustine and Mr. Zogby.[204] Kayne alleges that Mr. Augustine and Mr. Zogby "falsely represented construction costs, the progress of the work, subcontractor buyout, and the status of payments to subcontractors during construction and settlement negotiations" related to the Projects.[205]

In the Motion, Alta and Mr. Zogby argue that "at best, [Kayne's Counterclaims] just suggest[] vague topics of communications—not the actual words used—and cannot even identify which of the two accused parties made the statements or the date(s) they were made."[206]

The Court finds that Kayne pleads its fraud Counterclaim with sufficient particularity. Kayne includes relevant dates, contents, and parties. Kayne asserts that "Slopeside Manager's applications for payment for February, March, and April of 2024 showed ordinary progress of the work. In May of 2024, however, Slopeside [Manager] submitted an application for payment which included a mass reallocation of its schedule of values. Slopeside Manager's proposed reallocation demonstrated an intentional attempt by Slopeside Manager to conceal cost overruns."[207] Kayne also contends that "in May of 2024, six Assigned Subcontractors refused to

---

[204] *See* Kayne Countercl. ¶¶ 161-173.
[205] *Id.* ¶ 162.
[206] Mot. at 31.
[207] Kayne Countercl. ¶¶ 101-103.

30

continue performing work for the Sugar House Project due to non-payment."[208] Kayne further claims that for the Sugar House Project, Alta's "change order log dated May 8, 2024, showed at credit of $1,064,101.19 for deleted work. In actuality, there was $3,485,466.14 in unpaid change orders pending, a discrepancy of over $4.5 million."[209]

Therefore, the Court **DENIES** the Motion with respect to Alta's request to dismiss Kayne's fraud Counterclaim for failure to state a claim under Civil Rules 9 and 12.

### 3. *In addition, the Court finds that Kayne properly asserts its intentional misrepresentation Counterclaim (Count II).*

To prevail on an intentional misrepresentation claim, the asserting party must prove: (i) deliberate concealment by the other party of a material past or present fact, or silence in the face of a duty to speak; (ii) the other party acted with scienter; (iii) an intent to induce the asserting party's reliance upon the concealment; (iv) causation; and (v) damages resulting from the concealment.[210]

In its Counterclaims, Kayne asserts an intentional misrepresentation claim against Mr. Augustine and Mr. Zogby.[211] The facts supporting Kayne's intentional misrepresentation claim overlap with the facts detailed above for Kayne's fraudulent inducement affirmative defense and fraud Counterclaim.

In the Motion, Alta and Mr. Zogby maintain that Kayne's intentional misrepresentation claim fails because Kayne fails to meet its burden to plead the claim with particularity.[212]

---

[208] *Id.* ¶ 104.
[209] *Id.* ¶ 120.
[210] *See Strong v. Wells Fargo Bank*, 2012 WL 3549730, at *2 (Del. Super. July 20, 2012) (citing *Nicolet, Inc. v. Nutt,* 525 A.2d 146, 149 (Del. 1987)).
[211] *See* Kayne Countercl. ¶¶ 174-185.
[212] *See* Mot. at 30-31.

The Court finds that, for the same reasons Counterclaim (Count I) survives, the Motion is **DENIED** as to the intentional misrepresentation Counterclaim.

### 4. *The economic loss doctrine does not bar Kayne's fraud claims.*

The economic loss doctrine is a judicially created doctrine that prohibits certain tort claims when overlapping contract-based claims adequately address the alleged injury.[213] The economic loss doctrine does not always prohibit fraud claims.[214] Yet the doctrine generally "does not extend to claims of fraud where the alleged misrepresentation is independent of the contract, such as claims for fraud in the inducement."[215] Nevertheless, "[a]llegations of fraud that go *directly to the inducement of the contract*, rather than its performance, would present a viable claim."[216]

In *Brasby v. Morris*, the Court applied the economic loss doctrine and dismissed the plaintiff's fraud claim because the allegations did not arise independently of the contract, but were "relate[d] directly to the performance of the contract and are better addressed by applicable contract law."[217] In *Abbott Laboratories v. Owens*, the Court similarly found that the plaintiffs' fraudulent inducement allegations arose "solely from the performance of contractual duties under the Merger Agreement and, therefore, are insufficient to support a fraudulent inducement claim."[218] The Court in *Abbott Laboratories* also found that "[t]he fact that Plaintiffs have sued

---

[213] *Abbott Labs. v. Owens*, 2014 WL 8407613, at *7 (Del. Super. Sept. 15, 2014); *Brasby v. Morris*, 2007 WL 949485, at *7 (Del. Super. Mar. 29, 2007); *Danforth v. Acorn Structures, Inc.*, 608 A.2d 1194, 1195 (Del. 1992).

[214] *Abbott Labs.*, 2014 WL 8407613, at *7.

[215] *Gea Sys. N. Am. LLC v. Golden State Foods Corp.*, 2020 WL 3047207, at *8 (Del. Super. June 8, 2020) (quoting *American Aerial Services, Inc. v. Terex USA, LLC*, 39 F. Supp. 3d 95, at 111 (D. Me. 2014) (citing *Marvin Lumber and Cedar Co. v. PPG Indus., Inc.*, 223 F.3d 873, 885 (8th Cir. 2000))).

[216] *Brasby*, 2007 WL 949485, at *7 (emphasis added).

[217] *Id.* at *8.

[218] *See Abbott Labs.*, 2014 WL 8407613, at *9.

Defendants in their individual capacity does not alter the indisputable fact that the alleged fraudulent conduct *did not precede the Merger Agreement*."[219]

Kayne argues that the economic loss rule does not apply to its fraud claims.[220] Kayne asserts that Delaware's economic loss doctrine generally only prohibits recovery in tort cases where a product has damaged only itself, and Alta does not provide caselaw to show that the doctrine should apply in a fraud case.[221] Also, Kayne contends that the doctrine often does not apply when the parties are not in privity.[222] Kayne argues that because fraud claims are against individuals with whom it had no contract—Mr. Zogby and Mr. Augustine—the doctrine does not apply.[223]

Alta and Mr. Zogby disagree on whether the economic loss rule applies to fraud claims.[224] "To the contrary, a fraud claim alleged alongside a breach of contract claim—as in Kayne's Counterclaim—is barred by the economic loss rule unless the fraud claim is based on a duty independent of duties imposed by a contract."[225] Alta and Mr. Zogby contend that the parties "already had a pre-existing contractual relationship and all of the alleged fraud relates to and arises from performance of that pre-existing contractual relationship."[226] Alta and Mr. Zogby also oppose Kayne's privity argument.[227] "A corporation necessarily acts through human

---

[219] *Id.* (emphasis supplied).
[220] *See* Opp'n at 30-31.
[221] *See id.* at 32 ("Alta cites two cases, neither of which suggest the economic loss doctrine is applicable in this case. *Brasby*, 2007 WL 949485, at *6 (applying economic loss doctrine to negligence claims); *Data Mgmt. Internationale, Inc. v. Saraga*, 2007 WL 2142848, at *3 (Del. Super. July 25, 2007) (applying economic loss doctrine to conversion claim).")
[222] *See id*. at 32, quoting *Commonwealth Const. Co. v. Endecon, Inc.*, 2009 WL 609426, at *4 (Del. Super. Mar. 9, 2009) ([E]xceptions to the economic loss doctrine are legion, and have been judicially recognized in disputes involving multiple parties not in privity with each other.") (quoting *Commonwealth Const. Co. v. Endecon, Inc.*, 2009 WL 609426, at *4 (Del. Super. Mar. 9, 2009):
[223] *See id.* at 32-33.
[224] *See* Reply Br. at 18-19.
[225] *Id.* (citing *Brasby*, 2007 WL 949485, at *7).
[226] *Id.* at 20.
[227] *See id.*

beings. The privity of some of those persons must be the privity of the corporation, else it could always limit its liability."[228]

The Court finds that, because there are material issues of fact surrounding whether valid contracts exist, the Court cannot decide whether the economic loss doctrine bars Kayne's fraud claims relating to those potentially non-binding contracts. At this stage of proceedings, the Court may not determine whether Kayne's allegations of fraud "go directly to the inducement" of the purported settlement agreements rather than their performance.

### D. THE MOTION TO STAY

"There is no right to stay of discovery, even where a case dispositive motion has been filed."[229] Rather, whether to grant a stay of discovery is within the discretion of the Court.[230] The moving party bears the burden of proving that a stay of discovery is appropriate.[231] "[I]n each instance, the court must make a particularized judgment evaluating the weight that efficiency should be afforded (including the extent of the costs that might be avoided) and the significance of any risk of injury to plaintiff that might eventuate from a stay."[232]

In *In re McCrory Parent Corp.*, the Court of Chancery discussed three "special circumstances" that may justify denying a stay of discovery despite the pendency of a dispositive motion:[233] (i) where the motion does not offer a "reasonable expectation" of avoiding further litigation; (ii) where the plaintiff has requested interim relief; and (iii) where the plaintiff will be prejudiced because "information may be unavailable later."[234]

---

[228] *Id.* (citing *E.I. du Pont de Nemours & Co. v. Admiral Ins. Co.*, 1996 WL 111133, at *3 (Del. Super. Feb. 22, 1996)).
[229] *Orloff v. Shulman*, 2005 WL 333240, at *1 (Del. Ch. Feb. 2, 2005) (citing *Pensionskasse Der ASCOOP v. Random Intern. Holding, Ltd.*, 1993 WL 35977, at *1 (Del. Ch. Jan. 26, 1993); *Kahn v. Tremont Corp.*, 1992 WL 205637, at *2 (Del. Ch. Aug. 21, 1992)).
[230] *Id.*
[231] *Id.* (citing *Pensionskasse*, 1993 WL 35977, at *1).
[232] *In re McCrory Parent Corp.*, 1991 WL 137145, at *1 (Del. Ch. July 3, 1991).
[233] *Orloff*, 2005 WL 333240, at *1 (citing *McCrory*, 1991 WL 137145, at *1).
[234] *Id.*

The Court finds that none of the special circumstances are present here.  First, granting the Motion would not avoid further litigation.  The Motion only asks the Court to resolve the liability issues, not damages.  Thus, a stay would not avoid costs as litigation would continue regardless of the Court's decision on Alta's Motion.  Second, Alta and Mr. Zogby have not requested interim relief, even though a protective order would provide the relief that they are seeking regarding their discovery concerns.  Third, neither party has asserted facts to indicate that information may be unavailable later.  Thus, there is no concern of prejudice to either party.

The Court, therefore, **DENIES** the Motion to Stay.

## V.    CONCLUSION

For the reasons set forth above, the Court **DENIES** the Motion and the Motion to Stay.

**IT IS SO ORDERED.**

October 30, 2025
Wilmington, Delaware

*/s/ Eric M. Davis*
Eric M. Davis, President Judge

cc:    File&ServeXpress

35